5-23-0586. Helen, if you're ready, you may proceed. And when you begin, please identify yourself for the record. Good morning, Owners. I'm David Harris on behalf of Appellant Jevin Griggs. May it please the Court, Counsel. What happened in this case largely remains a mystery. While we know that the decedent, Wyatt Bailey, arranged to sell marijuana to Dustin Cooper, no witness saw the incident that led to the deaths of both Bailey and Sloan. Sloan, of course, was one of the people who arrived in the car with Cooper, along with my client, the driver, Allie Bryant, and another teenager. We don't know who drew a gun first, who fired first, or if anyone else in the car participated and confronted Bailey aside from Allie Bryant and Dustin Cooper. We don't know if my client got out of the car. No witness saw him confront Bailey. No witness saw him handle a gun. We also have no evidence of what he knew about why they were going to Wyatt Bailey's house. There's no evidence of when he joined this group in the car or anything they may have discussed beforehand. What we do know is that Wyatt Bailey's Glock with an extended magazine shot and killed the Montes Sloan. We also know, as the parties agree, that Dustin Cooper shot and killed Wyatt Bailey, shot him at least twice with a Smith & Wesson that he threw into a nearby ravine after the incident. There was also a third gun that was recovered, the Polymer 80, but it's unclear if that fired a shot that struck Bailey. What is clear is that this gun was the driver, Allie Bryant's, pride and joy. It was his gun as seen in numerous photos and videos found on his phone that was left at the scene, spanning several months leading up to this incident. It's also clear that Allie Bryant was out of the car. Like Cooper's phone, his phone was found at the scene near Wyatt Bailey's body. He also had a knot on his head indicating he was involved in the altercation. So while we know Allie Bryant and Dustin Cooper were involved, there was no reliable evidence that my client participated. This case is purely circumstantial and hinges largely on two pieces of evidence, the gunshot but neither are enough to prove my client guilty. I've detailed the flaws or the weaknesses of the gunshot residue results in the briefs, but to recap, my client Jevin, Dustin Cooper, and Allie Bryant all tested positive, as did Allie Bryant's driver's door. The decedent in the car, Claudante's phone, was not tested. This positive test doesn't mean they fired a handgun. It means they were either fired a handgun, were near the discharge of a gun, or came into contact with an object that had GSR particles on it. And the gunshot expert testified that gunshot residue travels with the bullet, and so a gunshot victim is one of those objects that can transfer GSR, gunshot residue particles, on contact. For example, as she agreed, as the expert agreed, someone shaking a gunshot victim, as my client was seen doing frantically when the police pulled over the car with Claudante's phone that was next to him in the car. So this positive gunshot residue testing was essentially guaranteed for my client the moment he was in the car next to the dying Claudante's phone, shaking him, trying to keep him conscious. The other evidence was Jonathan Ventura's prior inconsistency, his statement that he saw my client's door open as the car was about to flee the scene, his statement to the police. But this prior statement is quite clearly incorrect. It's contradicted by his trial testimony here that it was Dustin Cooper's door on the other side of the car that was open, which was his same testimony at Cooper's trial, as well as four witnesses related to the decedent right at Bailey here. His mother, Natasha, her boyfriend, Jason Hicks, Wyatt Bailey's friend, Brendan Cunningham, and the neighbor, Taylor Martin, all saw the rear passenger side door, Dustin Cooper's door, open as the car fled the scene, corroborating Ventura's trial testimony, not his prior statement. And that was further corroborated by the video evidence that shows, just as Ventura testified, the car door was open as it drove away and it slowed down near the intersection for Dustin Cooper's passenger door to close. And Jason Hicks even saw a person we now know to be Dustin Cooper getting into the car as the car was pulling away. Was that point of error preserved? The point of error... That you just discussed, the testimony of Ventura, in one trial versus the other trial. There was an error related to that that was preserved. I was discussing that as how weak this evidence was in relation to the sufficiency of the evidence. There was a preserved error related to that, where counsel then sought to rehabilitate Ventura's trial testimony with his prior testimony at Cooper's trial, which was identical to his trial testimony here, that it was Cooper's door that was open. And the judge did not allow him to do that. And was there a post-trial motion filed on that? I believe that was preserved in the motion from the trial, as well as arguments during the sidebar when counsel tried to get in this prior consistent statement. And what do you think is the impact of that prior inconsistent statement on your client's case? I think it was massive. It was the only evidence, it was the only piece of evidence showing he ever got out of the car was Jonathan Ventura's prior inconsistent statement. The state relied on it in its closing argument, in its initial closing argument, and in its rebuttal closing argument, even going to the lengths of reading the jury instruction about the use of prior consistent statements as substantive evidence. So it was a big piece of evidence here. Counsel should have been allowed to rehabilitate Jonathan Ventura's trial testimony. In your brief, you frame that as judicial estoppel. Yes, that's another error related to this. So I've argued that the trial court committed the preserved error of not allowing rehabilitation of the prior consistent statement. And then I also argued a due process violation and judicial estoppel, where the state never should have been able to introduce this in the first place, because it was directly contrary to the facts they accepted from Jonathan Ventura at Dustin Cooper's earlier trial. And do you think it meets all the criteria for judicial estoppel? Yes. It's, yes. With the, it was, the state introduced it. They took two positions. They're factually inconsistent. They're in separate judicial proceedings. They, of course, intended the jury, in both cases, to believe one version or the other. And they received a benefit from, from both. The state, in its brief, I should note on page 38 of its brief, it suggests that they weren't really inconsistent because, just like his testimony at Cooper's trial, his prior statement to Captain Hartshorn, also, he also noted that Cooper's door was open, the rear passenger door was open. That is factually incorrect. It's inaccurate. Your honors can listen to the audio. In the three-minute mark, around 3.30, he specifically asked about the rear passenger door in that audio. And he said, I didn't see nothing with the rear passenger door. It didn't look like that was open, but the front passenger's, the front passenger's side was. So he explicitly said Cooper's door was closed on audio. They did not use that, of course, at Cooper's trial. They used his trial testimony that Cooper's door was, that he saw Cooper's door open as the car fled. When he testified exactly the same at my client's trial, the state then impeached him with this contradictory statement that, no, I didn't see Cooper's door open. I saw my client's door open. But the state had called him, correct? The state called him in Cooper's trial, and he said the exact same thing at my trial when the defense called him, and that's when the state impeached him. They impeached their own witness. He wasn't their own witness in my client's trial. They called him at Dustin Cooper's trial. They were happy to rely on his testimony that Dustin Cooper's door was open. In my trial, the defense called him, and he testified, again, Dustin Cooper's door was open. And they impeached him with this statement to the police that, no, it was my client's door that was open. I didn't see nothing with Cooper's door. He didn't use the names, of course, but that's the easier way to keep track of these doors. But that was also quite clearly the incorrect version based on these four other witnesses in the video I discussed, which show that the gunshot residue testing was so weak, and there was no reliable evidence that my client ever got out of the car, no evidence of what led up to these events, or aside from Dustin Cooper arranging to buy drugs, the evidence was insufficient to convince a rational trial fact beyond a reasonable doubt. But failing that, I would ask this Court to reverse and remand for a new trial because the Court committed a preserved error of not allowing rehabilitation of Jonathan Ventura once the state impeached him, and the due process violation of using these two different truths at two different trials that denied my client a fair trial. If there are no further questions. Thank you, Counselor. You'll be given time for your vote. At the lady, you may proceed when you're ready, and please identify yourself for the record when you vote. Good morning, Your Honors. My name is Nick Moeller of the Attorney General's Office on behalf of the people. I'd like to first start just to correct. It was suggested that in the people's brief we misstated the facts, and I want to be clear what the people were trying to say is that between the two statements given by the witness Ventura, in one statement he says, I saw the driver, which the statement that was the same as what he said at his, at, sorry, Mr. Griggs' trial, defendant's trial. What he said was, I saw the driver, I saw an individual get into the driver's seat of the car, and I saw the back rear passenger seat open. The statement he gave to police after what he said was, I saw the individual getting into the back rear driver's side seat, so where the defendant was sitting, and I saw the front passenger side open. Sorry, the front passenger side door open. So what the state was trying to communicate was that in both instances he said, I saw one person out on the driver's side of the car, and I saw a door open on the passenger side. They were different between those, but not in ways that were relevant at both trials. But you agree with Justice Kagan's position that he was the state's witness in Cooper's trial, correct? Yes, Your Honor, which is... But not in this trial. Correct, Your Honor, which does go to the state's argument that the state actually was foreclosed from impeaching him at the initial trial because it was an immaterial fact. It was their own witness, and so in many instances, they would have been foreclosed from impeaching their own witness on an immaterial fact because the fact of the matter was at the first trial... How could it be immaterial if it was used to place the defendant in the car? Because at the first trial, where we have the statement at the first trial that the driver... I'm sorry. At the first trial, that defendant is the individual out of the car. Again, just shortening for the size. The person where the defendant was sitting was out of the car, and the rear passenger side was open. That is Mr. Cooper's trial. What the state is tasked with proving is that Mr. Cooper was out of the car committing the crime. It did not matter who was out on the other side. It was a... It mattered where the people were sitting, though. Not in Mr. Cooper's trial, Your Honor. In convicting Mr. Cooper, it didn't matter where the people were sitting. So which individual was out helping Mr. Cooper was actually immaterial to the elements of whether Mr. Cooper had committed the crime. Now, at the defendant's trial, then it becomes relevant who was out because the people's position is the person, as Mr. Ventura saw, was defendant. Now, at that trial, that part is relevant, but it's no longer relevant which door on the passenger side is open. It's interesting, though, that the timing of these things, the state's determining the relevance, right? I mean, shouldn't that be the judge's decision? Well, that could be true, Your Honor, but then it should have been objected to at trial so the court could actually make a decision. Part of the problem with these claims, the due process, and the res... I'm sorry, not res judicata, the judicial estoppel claims is the defendant never raised them. They were never put before the trial and were forced to construct these arguments post hoc. But the important thing is that if we go to judicial estoppel, there are five elements that have to be shown. That's the taking two positions, factually inconsistent, in separate proceedings, intending for the trial to affect, to believe they're true, and to succeed in the first. The state grants the defendant can show, too, that these things took place in two different trials, and the state won both trials. However, the state did not take two different positions. Judicial estoppel is not a question of, did they say two things where facts did not agree? It's, did they take two positions? And at both trials, the state's position has always been that both Mr. Cooper and defendant were out of the car, both of them fired guns, and both of them participated in the robbery and murder. So there are not two positions. Then, whether they're factually inconsistent, the state maintains they're not factually inconsistent because the statement the defendant keeps pointing to of Mr. Ventura saying to police, I saw the rear driver's side door open, was not saying that's the only car door open. In fact, he goes on to say, I saw a door open on the passenger side, although he does, yes, disagree on whether that's the front or rear side. But the reason he's saying he sees a door open on the driver's side is just to say, that's how I saw someone getting into that door. Okay, that's your spin on it. But the testimony, as I understand it, was at one trial he put the defendant in the car on the rear driver's seat, and on the other one he put the defendant in the other, on the passenger side. No. So that's not correct. He does not say anything to identify defendants specifically. I'm not talking about, but he's talking about two different doors being open in two different trials with two different defendants, and the doors that are being referred to are the rear doors, not the driver's door. No, Your Honor. And this is where it becomes difficult, because there are several inconsistencies that the defendant is only focusing on one, and it's conflating the two. So there are things happening on both sides of the car. Mr. Ventura's position. I understand. The driver's side door, let's eliminate that. Yes. Let's eliminate that. And if you get to the inconsistency of whether the defendant is getting, so he either saw someone get into. Which trial are you in? Sorry. At the Cooper trial. At the Cooper trial, he saw the driver get in. I don't want to hear about the driver. I only want to hear about the rear door. So at Cooper's trial, he sees the rear passenger seat open, and he sees the front, I'm sorry, the rear driver's seat open, door open, and he sees the front passenger seat open. Both those doors he sees open. I'm sorry, not at Cooper trial. I apologize. Let's start over. Yes. At the Cooper trial, he sees the rear driver's door open. Yes, Your Honor. He sees the rear. I've done it again. If I can start with the feminist trial. Okay. They say it's the same as Cooper's trial. He sees the, sure, he sees the rear passenger side open, and he sees someone get into the driver's seat. At the statement to police, right after the crime, he sees someone get into the rear driver's seat, and he sees the front passenger door. So there are two inconsistencies, who is getting in on the driver's side and which door is open on the passenger side. In both cases, though, he sees two doors open, and that's important because they're trying to suggest that at the police statement, what he said was the only door open was the back passenger, or back driver's side. But that's not true. If you look at what he's being asked, he says, yes, I saw that driver's side door open because someone was getting into it. You can't get into a door that's not open. He then follows it up by saying, and I saw another door open. And the state didn't contest that Mr. Cooper's door opened. They put four witnesses on the stand, I believe, that said they saw that door open. That was not contested. Why did the state impeach him, Mr. Ventura, if he wasn't saying inconsistent statements? He did. He was inconsistent about who the person was getting in on the driver's side. Okay. Now we've established that. He was inconsistent on that. But if you look at the reply brief for a defendant, that's not the inconsistency they're arguing. They back away from that argument. And that's because that was not material in Mr. Cooper's trial. That wasn't important in Mr. Cooper's trial. It's not important in Mr. Cooper's trial. It's important in Mr. Griggs' trial. Yes, Your Honor. But in order for there to be this due process violation, as they're alleging, the facts have to be important at both trials. The state can't go into irrelevant things at the first trial and impeach it. They can only impeach on things that are important to Mr. Cooper's trial at Mr. Cooper's trial. At Mr. Cooper's trial, it doesn't matter who the other person is with Mr. Cooper because they're trying to convict Mr. Cooper. And, therefore, there's not this inconsistency across trials. I would, unless Your Honor has further questions, I would move on just to the sufficiency. A defendant has suggested we don't know what happened. But if the court were to think they see a group of individuals going into a forest with axes on their shoulder and then several times later leaving the forest still with the axes and with a bunch of logs and someone goes in and sees a fallen tree, we know what happened. The fact that no one saw someone cut the tree down doesn't mean it didn't happen. And here there was evidence that the defendant went to a planned robbery with a group of individuals. They were armed. The defendant had gunshot residue on his hands. He was found with one of the murder weapons at his feet and proceeds from the robbery at his feet. At the very least, that is enough under the standard of Jackson, the sufficiency standard, to say that some reasonable person could credit the State's witnesses, could take the reasonable inferences suggested by the State. And under Jackson's lenient standard, that is sufficient. I see that I'm out of time. I've got to have a moment to conclude.  Any further questions? Could you just quickly address the cell phone that was found at the scene where his counsel indicated he was going to call? Yes, Your Honor. On the ineffective assistance claim, there was neither unreasonable performance, because once it became clear that the State was not contesting it was Mr. Cooper's phone, once it became clear that the State put Mr. Cooper out of the car as well, there was no need for a defendant to bring cumulative evidence that Mr. Cooper was out of the car. And there also can be no prejudice. There's no reason the jury would have thought anything but that was Mr. Cooper's phone, because the State told them that's what happened. So under either prong of strickling, the defendant cannot meet his burden. And so for those reasons and the reason that I'm brief, unless there are further questions, we would ask that you affirm the judgment. All right. Thank you.  Yes, to be perfectly clear, at both Cooper's trial and my client's trial, Dr. Jonathan Ventura testified that he saw the driver getting to the car and Cooper's rear passenger door open as the car fled, confirmed by video. Of course his prior statement to the police was inconsistent. Counsel is arguing they're not inconsistent. Of course they were inconsistent. That's how they used it at this trial, as a prior and consistent statement for substantive evidence. Counsel argued at Cooper's trial they were foreclosed from correcting Ventura, supposedly correcting Ventura's trial testimony with the prior statement there, because it wasn't material. But his statement was about seeing Cooper's door open. That's not material at Cooper's trial, that he's out of the car involved in this confrontation. Of course it was material. They relied on it. They relied on it in closing argument at Cooper's trial, arguing that we know the defendant, Dustin Cooper, at the trial was out of the car. The evidence came from Jonathan Ventura. So his statement about Cooper's door being open was material there. They relied on it. They gained a benefit from it. Cooper was convicted. And at my trial they turned around and used Jonathan Ventura's statement that that door was closed. That door was closed. I didn't see nothing with that door. It looked like it was closed. It was my client's door now. That was open. So of course this was open. What about their argument that in your reply brief you backed away from the judicial estoppel argument? I'm not backing away from that argument in my reply brief. I think all of it has been met. Judicial estoppel, of course, isn't a preserved issue, but we ask for plain error. And in this case the evidence is closely balanced. It's weak and circumstantial evidence, as I discussed. And based on that weakness of the evidence, this court doesn't even have to reach the judicial estoppel or due process violations of the prosecutor using different truths for different defendants because the evidence, as I discussed in the briefs and in my opening argument here, was so weak. The gunshot residue testing doesn't say anything about his participation. You've got the gun found in the car. You've got proceeds found at his feet. You do have some circumstantial evidence that puts him at least accountable. Not specifically my client. There's no evidence, no reliable evidence, aside from this incorrect, inconsistent statement that his door was open, that my client was there. There's no evidence about any discussion leading up to it. No evidence. No gun in the car. No guns in the car, yes. And Justin Cooper. No proceeds at his feet. There are proceeds in the back. There are guns found in the back of the car against the center hump and underneath Allie Bryant's driver's seat. Cleopatra Sloan, who got shot, is also sitting in the center. So we don't know how the guns got there. My client's DNA and fingerprints are not found on any of it. He had no time to really get away from this group. They fled the scene. The car was stopped minutes later. But he didn't get out of the car and run. No, he's a 16-year-old. He didn't retreat, as they say. He didn't retreat from the crime. Well, if he was there when the gunshots were happening and he was in the car, I don't think he'd want to get out at that point. The car drives away. You see it driving at a rapid speed. His associates, I don't know if they're friends or not. We don't have evidence of that. He's shaking this kid, they're teenagers, next to him in the seat. There's vomit on his seat. There's someone shot and bleeding to death next to him, and they're arrested mere minutes later on the road to Dandle. So I don't think he had any time to get away, and there's no evidence of any agreement to participate, no evidence that he actually participated. Like I said, the gunshot residue testing says nothing. Jonathan Ventura's prior statement, besides error, is also pretty incorrect. The four witnesses rebutted it, the video rebutts it, and corroborates his trial testimony. It was Cooper's door that was open. So there's no evidence that my client, no reliable evidence, to show my client was guilty beyond a reasonable doubt. We don't just look for inferences to think he did it. You need to be able to infer that a rational trial could find him guilty beyond a reasonable doubt. And there's so much unproven in this case. I would ask this court to reverse his convictions outright. But failing that, for the errors related to Ventura's prior testimony, I would ask for a new trial, as well as for ineffective assistance, as argued in the brief. Any final questions, Mr. Payton? All right, thank you, Your Honor. Thank you, Your Honors. We will take this matter under advisement, issue a ruling in due course.